IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN ELAINE GLOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-CV-1187-STA-egb |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of | ) | |
| Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Robin Elaine Glover filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and again upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on February 13, 2013. On April 8, 2013, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision, and whether the correct legal standards were applied.[2]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] It is "more than a mere scintilla of evidence, but less than preponderance."[4] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide a case accordingly.[5] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[6]

Plaintiff was born on March 3, 1964, and alleges that she became disabled on November 15, 2010. In her disability report, Plaintiff alleged disability due to depression, anxiety,

---

[1] 42 U.S.C. § 405(g)

[2] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

[3] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[4] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[5] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[6] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

degenerative disc disease, and migraines. She attended college and business school for a year. She previously worked at a truck stop and as a custodian.

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements of the Act through December 31, 2014; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: multiple joint pain, including back, shoulder, hips, and leg pain, hypertension, migraine headaches, major depression, generalized anxiety, panic disorder, and post-traumatic stress disorder ("PTSD"); but she does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404 subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work with certain limitations; she should never climb ladders, ropes, and scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but cannot work around hazards; she can perform only simple job tasks and is limited to occasional public contact; (5) Plaintiff is capable of performing her past relevant work; and (6) Plaintiff has not been under a disability, as defined in the Social Security Act, from April 3, 2006, through the date of the ALJ's decision.[7]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[8] The claimant bears the ultimate burden of establishing entitlement to benefits.[9] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the

---

[7] R. 14 – 20.

[8] 42 U.S.C. § 423(d)(1).

[9] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[10]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[11]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[12] Here, the sequential analysis proceeded to the fourth step. The ALJ found that Plaintiff could perform her past relevant work as a custodian and, therefore, was not disabled within the meaning of the Act. Alternatively, the ALJ found that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform.

---

[10] *Id.*

[11] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[12] 20 C.F.R. § 404.1520(a).

Plaintiff complains of the weight given to the medical opinions in the record, specifically the opinion of her treating medical provider, Nurse Practitioner Jennifer Autry. Plaintiff asserts that the ALJ erred by failing to evaluate the mental residual functional capacity assessment completed by NP Autry. Plaintiff also complains of the ALJ's credibility assessment. Plaintiff's arguments are not persuasive.

At step four of the sequential analysis, the ALJ compares the claimant's residual functional capacity with the requirements of the claimant's past work.[13] Past relevant work is, generally, a job that was performed within the last fifteen years, performed long enough to learn how to perform the job, and was substantial gainful activity.[14] If the past job did not require the claimant to perform activities in excess of the claimant's residual functional capacity, the claimant will be found not disabled.[15] A claimant must prove that she is unable to return to her past relevant work either as she performed that work or as that work is generally performed in the national economy.[16] In the present case, Plaintiff has failed to carry her burden of proof.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[17] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has

---

[13] 20 C.F.R. §§ 404.1520(e), 404.1560(b); *see also* Social Security Ruling 82-62, 1982 WL 31386, *3 (S.S.A.).

[14] 20 C.F.R. § 404.1565(a).

[15] 20 C.F.R. §§ 404.1520(e), 404.1560(b), 404.1561.

[16] *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

[17] 20 C.F.R. §§ 404.1502, 404.1527(c)(1).

examined the claimant but does not have an ongoing treatment relationship.[18] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[19]

Opinions from non-physician sources such as NP Autry are not assessed for "controlling weight," and SSR 06-3p does not mandate that an ALJ provide an explanation of the weight given to opinions from such sources[20] Instead, SSR 06-30 requires that an ALJ explain his reasons only "when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source." In this case, the ALJ did not determine that NP Autry was entitled to greater weight than a physician treating source. As such, the ALJ was not required to explain his reasons for rejecting NP Autry's findings.

However, the ALJ did, in fact, explain his weighing of NP Autry's opinion. Although the ALJ did not specifically refer to NP Autry's medical source assessment, he referred to her findings and found her opinion entitled to little weight. The ALJ specifically noted NP Autry's

---

[18] *Id.* §§ 404.1502, 404.1527(c)(2).

[19] SSR 96–6p.

[20] SSR 06-3p provides that:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given the opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

global assessment of functioning ("GAF") assessment for Plaintiff of forty-three which indicated serious limitations but pointed out that this assessment was unsupported by the other evidence of record.[21]

The ALJ also noted that NP Autry's opinion that Plaintiff had serious cognitive functional impairment was not supported by the record. For example, Alford Karyusuf, M.D., a psychological consultative examiner, found that Plaintiff was oriented to time, place, and person, reported no hallucinations or delusions, her intelligence was dull normal, and her affect was appropriate; while she had diminished concentration and memory, her recall was impaired, and her mood was mildly to moderately depressed, Plaintiff could still understand and follow simple instructions.[22] Russell Ludeke, Ph.D., and Ray M. Conroe, Ph.D., state agency psychological consultants, reviewed the evidence and opined that Plaintiff was able to understand, remember, and carry out simple tasks and handle infrequent superficial interaction with coworkers and the public and the routine stresses of a work setting.[23] The ALJ could properly determine that NP Autry's opinion was entitled to little weight because it was inconsistent with other evidence.[24]

Additionally, Plaintiff complains that the ALJ gave less weight to the opinions of Steven Richards, M.D., and Dr. Richard Hadden, M.D., state agency consultants, regarding Plaintiff's physical limitations, while giving great weight to the opinions of Dr. Ludeke and Dr. Conroe regarding Plaintiff's cognitive limitations, even though all four were non-examining consultants. The ALJ could properly give greater weight to the opinions of Dr. Ludeke and Dr. Conroe,

---

[21] R. 447.

[22] R. 413.

[23] R. 83, 98-99.

[24] *See* 20 C.F.R. §§ 404.1513, 404.1527, 416.913, 416.927.

7

although they were also non-examining sources, as the ALJ found their opinions consistent with the medical record as a whole which revealed that Plaintiff had difficulty with concentration and relating to other people.[25] Their opinions were also supported by the opinion of Dr. Karyusuf.

Plaintiff also contends that the ALJ erred by "selectively" relying on portions of Dr. Karyusuf's opinion when he failed to account for Dr. Karyusuf's finding that Plaintiff have only superficial contact with others. Despite Plaintiff's contention, the ALJ did account for this finding by limiting Plaintiff to occasional public contact only. Moreover, Plaintiff herself reported that she had no problems getting along with family, friends, neighbors, and others and also got along with authority figures, which further supports the ALJ's finding.[26]

The Court finds that the ALJ's weighing of the medical evidence was in accordance with the regulations and is supported by substantial evidence.

Plaintiff argues that the ALJ's credibility finding failed to comply with the agency's regulations and ruling for evaluating credibility. To the contrary, the ALJ sufficiently explained his credibility finding consistent with SSR 96-7p by discussing what the medical evidence and other evidence indicated as to the intensity, persistence, and limiting effects of Plaintiff's symptoms in contrast to her allegations of disabling symptoms.[27] The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.

---

[25] *See* 20 C.F.R. §§ 404.1527 and 416.927.

[26] R. 233-34.

[27] *See Potter v. Colvin*, 2013 WL 4857731, at *14-15 (E.D. Tenn. Sept. 11, 2013) (rejecting the plaintiff's argument that the ALJ erred in employing a "boilerplate" credibility finding).

A claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence."[28] To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[29] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[30] However, the ALJ's credibility finding "must find support in the record."[31]

In the present case, Plaintiff failed to provide objective medical evidence confirming the severity of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. On examination in November 2010, Plaintiff had no lumbar spine tenderness, full range of motion, normal reflexes and motor function, no sensory loss in her legs or feet, and negative straight leg raise testing bilaterally, and her mental condition was normal.[32] On August 18, 2011, Plaintiff had pain and decreased range of motion in her left shoulder and a mild reduction in motor strength; however x-rays of her shoulder were normal.[33] Additionally, Plaintiff complained of back pain and migraine headaches, but x-rays of her lumbar spine were

---

[28] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[29] *Id.*

[30] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[31] *Id.*

[32] R. 305.

[33] R. 329-30, 358.

normal and a CT scan of her head was also normal.[34] Discounting credibility is appropriate when an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.[35]

The ALJ also found that Plaintiff's activities were not reflective of her alleged disabling limitations.[36] Plaintiff reported that she did her own laundry and washed dishes; she also shopped for groceries and clothing, handled her finances, and scrapbooked. Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as she alleged.[37]

Plaintiff contends that her medications caused drowsiness. However, the ALJ properly omitted additional restrictions in his residual functional capacity finding because the side effects were not documented in the record.

Finally, Plaintiff argues that the ALJ erred by failing to include the moderate limitations he found at step three of the sequential evaluation process as part of Plaintiff's residual functional capacity assessment and by failing to perform a function by function assessment of Plaintiff's non-exertional limitations. The paragraph "B" criteria is not a residual functional capacity assessment. Instead, a residual functional capacity is assessed if it is determined that

---

[34] R. 245, 507-08.

[35] *See Walters*, 127 F.3d at 531.

[36] *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 96-7p; Walters, 127 F.3d at 532; *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

[37] R. 230-32. *See Keeton v. Comm'r of Soc. Sec.*, 2014 WL 5151626 *15 (6th Cir. 2014) (finding that the ALJ properly considered Plaintiff's ability to spend time with family and other veterans, drive or walk to the local coffee shop, and assist with chores around the house, when assessing the credibility of Plaintiff's subjective complaints).

Plaintiff's impairments do not meet or equal the requirements of any listed impairment.[38] The ALJ considers the same evidence considered at step three when making a residual functional capacity finding, and that was done in this case. Contrary to Plaintiff's assertions, the ALJ accounted for Plaintiff's moderate limitations in social functioning and concentration and found that, due to her limitations, Plaintiff could perform only simple job tasks and was limited to occasional public contact. SSR 96-8p requires only that the ALJ's discussion describe how the evidence supports the residual functional capacity assessment.

The ALJ properly considered the relevant evidence and resolved any conflicts in the evidence, and substantial evidence supports his findings. Plaintiff has failed to meet her burden of proving that her condition caused disabling limitations.[39]

In response to a hypothetical question that included Plaintiff's age, education, work experience, and the ALJ's assessment of Plaintiff's residual functional capacity, the vocational expert testified that Plaintiff could perform her past relevant work as a custodian.[40] Alternatively, the vocational expert identified examples of other jobs that an individual with Plaintiff's limitations could perform, such as hand sorter or inspector, that exist in significant numbers in the national economy.[41] Plaintiff failed to prove that she had limitations other than those in the residual functional capacity and hypothetical questions. Thus, the ALJ properly relied on the vocational expert's testimony.

---

[38] *See* 20 C.F.R. § 416.920(a)(d)(3).

[39] *See* 42 U.S.C. §§ 423(d)(5)(A), 1382(a)(3)(H)(i); 20 C.F.R. §§ 416.912(a), (c), 416.929(a).

[40] R. 53-54.

[41] *Id.*

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 1, 2017.